Dubois *v.* Baker.

[KINGS GENERAL TERM, December 14, 1863. *Brown, Scrugham* and *Lott,* Justices.]

---

DUBOIS and others, adm'rs &c., *vs.* BAKER.

B. being sued by the executors of A. upon promissory notes given in May and June, 1861, to the testator, set up by way of counter-claim' or set-off, a note for $5000 made by A., dated November 19, 1860, payable one day after his death; which note B. alleged was given in settlement of his claim against A. for money lent, money had and received, goods sold and delivered, and for work, labor, services, counsel, advice, &c. A. died in January, 1862, at the age of 80 years. His eyesight had been impaired and gradually decaying for some years; and for more than a year before the note was made he was entirely blind. B. resided in the neighborhood, and occasionally sold farm produce for A., paid his taxes, collected money and conducted lawsuits before justices &c. Beyond these inconsiderable services B. offered but little proof in respect to the consideration of the note, and produced no book containing entries of the items which made up the $5000; nor did he show how much was due for money, how much for property, and how much for services. On the other hand the plaintiffs produced receipts from B. to A. in full for services and demands, dated subsequent to the giving of the $5000 note. *Held* that the proof showed an

absence of any consideration for the latter note; and that the judge would have been justified in directing a verdict for the plaintiffs upon that ground.

Questions referring to the appearance of a promissory note, at the trial, as, whether the body of the instrument and the signature were written with the same ink; whether there appears to be an erasure on the note; whether the erasure was made before or after the body of the note was written; and whether either of the edges of the note were cut edges, or the ordinary foolscap edges; are proper, as calling for *facts* (and not opinions) which are apparent and obvious, and which the party has a right to prove, if material.

As respects the existence of a writing upon an erasure, and whether it was made before or after the body of the note was written, if that rests in opinion, it is a question upon which a witness who is a bank cashier is qualified to speak as an expert.

Where notes and receipts of a party, conceded to be genuine, are already in evidence, for other purposes of the cause, a witness who is an expert may state in what respect the character of the handwriting of another note (whose genuineness is questioned) differs from such notes and receipts.

APPEAL from a judgment entered upon a verdict at a circuit.

*A. J. Parker,* for the plaintiffs.

*H. A. Nelson,* for the defendant.

*By the Court,* BROWN, J.    This action was brought to recover the sum due upon a promissory note, dated at Hyde Park, May 1, 1861, for $500, payable to Isaac Allen, the plaintiffs' intestate, or bearer, one year after date, with interest; also a promissory note dated at the same place, June 25, 1861, for the sum of $100, payable to Isaac Allen or bearer, thirty days after date.    The defendant, in his answer, did not deny the making and delivery of the two notes, but he set up in his answer, by way of counter-claim or offset, in substance, that on the 19th day of November, 1860, the intestate was indebted to the defendant in various large sums of money, for money lent by the defendant to the intestate and for which the latter had given his promissory notes to the former; and also for money had and received by Allen for the defendant; and for part of a bond and mortgage sold

and assigned by the defendant to Allen; and for goods, wares and merchandise, and bonds, sold and delivered by the defendant to Allen, and for work, labor and services, counsel, advice and assistance rendered and furnished by the defendant to Allen, and at his request.    That Allen and the defendant, on or about the 19th day of November, 1860, adjusted all claims and demands which the former had against the latter, at the sum of $5000, and it was agreed that Allen was indebted to the defendant in such sum of $5000, which sum was to be paid out of the estate of said Allen, one day after his death, and should then become due and payable.    And Isaac Allen did then, at the town of Hyde Park, make and deliver to the defendant his promissory note in words and figures following;

"$5000.    One day after my death, for services rendered and value received, I promise to pay, and there shall be paid out of my estate to A. C. Baker or bearer, the sum of five thousand dollars.    Hyde Park, November 19th, 1860.

ISAAC ALLEN."

It is of consequence to keep in mind that the defendant claims the note to have been given to him for the sum found due to him upon an account stated, which account consisted of money actually advanced and received, of goods and property sold, and services rendered, and that it is payable after the death of the maker, and without interest.    There were some other items of set-off claimed in the answer, but no question arose upon them at the trial, and it is not worth while to notice them further.    The question litigated was the genuineness and validity of the $5000 note.

Isaac Allen died on the 20th day of January, 1862, at Hyde Park, where he had resided for many years, upon a farm of his own, the management and cultivation of which was his only business.    He had neither wife nor children at the time of his decease, and no one resided with him, at and for some time before his death, but Mary E. Sarles, a woman of somewhat doubtful reputation.    He was 80 years of age

when he died ; his eyesight had been impaired and gradually decaying for some years, and for more than one year before the note was made he was entirely blind. Abram C. Baker resided in the neighborhood. He was not a professional man, but his customary occupation does not appear. He was frequently at Allen's house about the time the note bears date, and his relations to the deceased were somewhat intimate and confidential, for he occasionally sold farm produce for Allen, paid his taxes, attended to a lawsuit or so in justices' courts, collected money for him, and, as the witnesses say, assisted him in the transaction of his business. Beyond these inconsiderable services he offered but little proof of the allegations of his answer in respect to the money, property and services therein referred to as the consideration of his claim. He produced no book containing entries of the items which made up the $5000, nor did he attempt to specify how much was due for money, how much for property, and how much for the services alleged to have been rendered. He did, however, produce a witness, Edward Barrett, who testified that in December, 1860, he heard Allen say Baker was a clever fellow and was doing business for him, and a few days before he had had a settlement with him, and had given Mr. Baker a note for services, for $5000. The character of this witness was impeached upon the trial, to an extent more or less. I may also state in this connection, that David Traviss, a witness examined by the plaintiffs, testified he heard Baker say, after the inventory of Allen's estate was taken, that he had a note against the estate for $5000. He stated how it was drawn, one day after death. He said he drew the note and Isaac Allen signed it, at Allen's house. They were alone, and nobody was to know it till after his death. No reason for the gift was assigned by Baker. He said Allen wanted to give him a present, as he had done a great deal for him. The weight of the evidence tended to show that the signature was in Allen's handwriting, while it established very satisfactorily that the body of the note was written by Baker, in dif-

ferent ink from that of the signature. It is to be observed that the two notes upon which the plaintiffs' action is brought, and upon which the defendant admitted there was $673.53 due, were given in May and June, after the date of the $5000 note. The plaintiffs also produced and proved Baker's receipt to Isaac Allen, of one dollar, in full for services and demands, dated May 1st, 1861. Also another receipt of Baker's to Allen, dated August the 8th, 1861, in which he acknowledges the receipt of $5.60 for expenses for selling a grey horse, and other services up to that date. The plaintiffs also proved by Dr. Edward H. Parker, a witness accustomed to the use of the microscope, that he had examined the note and the writing thereof through that instrument, and that the word year, in the body of the note, had been erased and the word day written upon the erasure, so as to make the same payable one day in place of one year after the death of the maker; and that the body of the note, which was written in blue ink, had been written after it was signed with the name of Isaac Allen, which was written in black ink, because certain parts of the blue ink pressed on and overlapped the black ink. This was the substance of the evidence upon the trial. The jury found a verdict for the plaintiffs, thus affirming that the signature of the note for $5000 was a forgery, or that it was fraudulently obtained from the intestate by procuring his name upon a blank piece of paper, and then writing the note over it. We do not see how they could have reached any other than the latter conclusion. However that may be, one thing is quite apparent from the proof, that the note was made without any consideration. The date of the two notes given by Baker to Allen, upon which the plaintiffs brought their action, the date of the two receipts of Baker, produced upon the trial, the fact that the two notes were payable at short periods of time, and one of them upon interest, while the $5000 note was made payable without interest and after the death of the maker, Baker's own declarations to the witness David Traviss, and the entire absence of proof in support

Dubois *v.* Baker.

of the consideration, makes it too clear for doubt that that essential element was wanting. Had the judge upon the trial directed a verdict for the plaintiffs upon that ground, we think it would have been right. We might therefore safely leave the case where it is; for it is quite plain that a new trial would result in nothing different. I will, however, proceed to consider briefly some of the defendant's exceptions to the decisions of the judge, admitting and rejecting evidence upon the trial.

The first class of objections were made to questions put to the witnesses in regard to the appearance of the $5000 note upon the trial. John F. Hull, the cashier of a bank, of 10 or 12 years standing, was asked by the plaintiffs' counsel if the signature and the body of the note were written with the same ink? Also, "Does there appear to have been an erasure on the note?" Also, "Was the erasure made before or after the body of the note was written?" Also, "Are either of the edges of the note in question cut edges, or the ordinary foolscap edge?" These questions were severally objected to by the defendant's counsel, and the objections overruled and exceptions taken. They all referred to the appearance of the $5000 note as it was exhibited at the trial. They were designed to elicit facts, not opinions. Whether the ink upon a written instrument is blue or black, whether the surface of the paper has been subject to abrasion, or the edges of the paper are cut smooth and even from end to end, as with the manufacturer's instrument, or uneven and irregular, as with the scissors or a knife, are not matters of opinion; they are facts, apparent and obvious, to which the attention of the witnesses might be directed, and to which they might testify. The plaintiffs had a right to prove them and put them into the case if they were material, as they certainly were. As to the writing upon the erasure, or whether made before or after the body of the note was written, if that rested in opinion, it was a question upon which the witness, who was a bank cashier, was qualified to speak as an expert.

Dubois *v.* Baker.

(*Cowen & Hill's Notes*, 1418, 1419. *Sheldon* v. *Benham*, 4 *Hill*, note b. at page 131. *Stone* v. *Hubbard*, 7 *Cush.* 595.) These observations will apply to some of the defendant's other objections, especially to the evidence of Joseph C. Harriss and Dr. Edward Parker, which I shall not specially notice. Joseph C. Harriss, the cashier of the Merchants' Bank, was asked by the counsel for the plaintiffs to "State in what respect the character of the handwriting of the $5000 note differs from the other receipts and notes of Baker that have been produced to you." This was objected to by the defendant's counsel as being a comparison of handwriting, and inadmissible. The objection was also overruled, and the defendant excepted. The two notes and the two receipts of Baker were already in evidence before the jury, and for a different purpose than that of testing the genuineness of the signature to the $5000 note. The signature of Baker to the notes and receipts were conceded, on both sides, to be genuine. The signature of the note in dispute might then be compared with them, within the rule laid down in *Doe* v. *Newton*, (5 *Adolph. & Ellis*, 514,) and the witness, who was an expert, might state in what respect the character of the handwriting differed.

The defendant deemed it important to prove that when the $5000 note was given there were two inkstands present with the intestate and himself at the house of the former. He was sworn in his own behalf and asked if he was in the habit of carrying an inkstand with him in 1860 and 1861. The evidence was objected to and rejected. The effect of this evidence was to show what took place at a transaction which the defendant had personally with the deceased, Isaac Allen. It was therefore within the prohibition of § 399 of the code, and properly overruled.

Another of the defendant's exceptions refers to the admissibility of questions put by the plaintiffs' counsel to the defendant's witness, Mary E. Sarles, on her cross-examination, touching the claim she made against Allen's estate. She

Jones *v.* Seward.

had on her direct examination given evidence for the plaintiffs, and stated what the claim was, and that it had been settled. The only ground of objection was that the claim had been settled.   If it was legitimate proof before settlement, it must have been so afterwards.   The plaintiffs, I think, might show that the amount she claimed greatly exceeded that which she finally accepted.   It was a circumstance affecting her credibility, and might go to the jury upon the cross-examination, for what it was worth.

Judgment should be entered on the verdict, for the plaintiffs.

[KINGS GENERAL TERM, December 14, 1863.   *Brown, Scrugham* and *Lott,* Justices.]