THE BANK OF THE COMMONWEALTH, Respondent, *v.* BENJA-
MIN F. MUDGETT and FREDERICK V. BOOTH, impleaded
with JOHN WILSON, Jr., Appellants.

Where a firm, whose business requires capital, has had continuous dealings
with a bank, including discounts of paper for the firm, upon their indorse-
ments, actual notice of dissolution must be brought home to the bank to
limit the liability of the partners upon paper subsequently discounted by
it on the credit of the firm name.   Publication of notice in a newspaper
is not sufficient.

The fact that a note, drawn to his own order, is brought to the bank by one
partner, and there indorsed in the firm name, before discount, does not
establish that the discount was not made upon the credit of the firm, nor
throw upon the bank the burden of showing assent or ratification by the
other partners.

A certificate of protest by a notary, stating that service was made by leav-
ing written notice at the indorser's " desk in the custom-house, with a
person in charge, he being absent," there being no specific objection that
this was not shown to be his place of business, and no proof that any
better service could have been made, must be held to be, *prima facie*,
sufficient evidence of due protest.

On an issue as to the genuineness of a signature (an indorsement), the ques-
tion, " Would you take it against his denial of the signature?" is purely
hypothetical and immaterial.

A witness may be asked whether, in the course of official duty, he is called
upon to pass and act upon the signature of the alleged indorser.   It is
competent, as showing the extent and means of his knowledge, not for
comparison of signatures.

The opinion of witnesses as to the genuineness of other alleged signatures
of the indorser is immaterial.   It is incompetent for the purpose of com-
parison, or exhibition to the jury, and, as a test of the knowledge of the
witness, would involve the trial of a collateral issue.

(Argued for the appellant January 14; decided May 6, 1871.)

APPEAL from an order of the General Term of the Supreme
Court in the first district, affirming a judgment, on the trial
at the circuit, upon a verdict for the plaintiff.

This action is upon a promissory note, dated May 30, 1863,
of which John Wilson, Jr., is the maker, for $1,000, payable
to his own order, thirty-one days after date, indorsed by him

as the payee and first indorser, by the defendant Mudgett, as second, and by Wilson and Booth, as third indorsers.

The complaint sets forth the note, alleges the demand of payment at maturity, and service of notice of protest on the indorsers.

The answer of Mr. Mudgett is a general denial of the complaint. · That of Mr. Booth puts in issue the copartnership of Wilson and Booth at the time of the indorsement, and the indorsement by the firm.

The defence, to which the evidence on behalf of Mr. Mudgett was particularly addressed at the trial, related to the genuineness of his indorsement.

On this subject the evidence was conflicting. . Some exceptions were taken on his behalf during the trial, as to the admission and exclusion of evidence affecting the genuineness of his signature, which sufficiently appear in the opinion of the court.

The presentation of the note and demand of payment, and the service of notice of protest, were proven by the certificate of the notary.  There was no other evidence on this subject, except such as has an incidental bearing.  The certificate states that the notice was served on Wilson and Booth by delivering it personally to the defendant Booth, and on Mr. Mudgett by leaving a written notice directed to him at his desk in the custom house in New York, with a person in charge, he being absent.  Mr. Mudgett was a deputy collector, and occupied a desk at the custom house in the performance of his official duties.  An objection was taken on his behalf to the admission of the certificate, without stating any ground specifically, and an exception to the ruling of the judge admitting it in evidence.

The proof bearing particularly on the defence of Mr. Booth showed that a copartnership was formed by the defendants Wilson and Booth, May 1st, 1862, for the transaction of business as custom house brokers, at the city of New York.  That the business was carried on under the firm name of Wilson and Booth, until their dissolution on the 4th of May, 1863.

That a new partnership was formed on the same day, by the admission of John T. Willis as a member, and the business was thereafter carried on under the firm name of Wilson, Willis and Booth, till some time in the following June, when Wilson left the city, and the firm appears to have broken up. On the day of the dissolution Wilson and Booth published notice thereof, and of the formation of the new firm, in the Journal of Commerce, a newspaper published at the city of New York, but the paper was not taken at the bank, and no evidence was given tending to prove that the plaintiff had any other notice of the dissolution. It was also proven that Wilson and Booth opened an account with the plaintiff, soon after the formation of their firm, which was continued during the existence of the firm, and was not closed till some time after the discount of the note now in suit. That the firm made frequent deposits of money, which were entered in their pass-book, and drew against their deposits by checks of the firm. During the year the bank discounted two or three notes drawn by Wilson, and indorsed by the firm, or in its name, the proceeds of which were entered in the pass-book as cash deposits. The note in suit was discounted by the plaintiff's bank on the day it bears date, and entered in the pass-book in like manner. A prior note for $500, so drawn and indorsed, was discounted by the bank in the preceding February, and became due the same day that the note in suit bears date and was discounted. The pass-book was under the inspection of Mr. Booth, and he knew of the entry therein of the previous notes discounted, and also of the one in suit. Mr. Booth also drew the check of the firm of Wilson and Booth, to take up the $500 note, on the 30th of May, 1863, and other checks on which Wilson drew the remainder of the proceeds of this note. Mr. Booth testifies, however, as a witness in his own behalf, that he did not know that the firm name was indorsed to obtain the said discount. It was proven that Wilson applied for the discount, and exhibited the note to the president of the bank, before the firm name was indorsed. That the president inquired for whose account

it was, and Wilson replied that it was for Wilson and Booth. He then required the indorsement of the firm, which was made by Wilson.

The counsel for the defendant Booth moved, when the case was rested on the part of the plaintiff, and again when the whole evidence was closed, to dismiss the complaint, or for a nonsuit, on the ground that the transaction was for the individual account of the defendant Wilson, and that the note was indorsed after the dissolution, without the knowledge or consent of Mr. Booth. The motion was denied and an exception was duly taken.

His counsel then requested the judge to charge the jury, in substance:

1st. That the note, not having the firm name indorsed thereon when offered for discount, the jury must infer that it was discounted for Wilson, and not by way of loan to the partnership, even if the plaintiff thought the note was made on partnership account.

2d. That a plain distinction is drawn between notes made by a firm, or by one of its members, to the order of and indorsed by the firm, and discounted by a bank. The former might create such a dealing as would require actual notice of dissolution, while the latter transaction would not; and, in the latter transaction, assent to the use of the firm name or an adoption of the liability by all the parties must be shown, to make them liable as indorsers, and the burden of showing such assent or adoption lies with the plaintiff.

3d. If the bank had not, previously to the note in suit, discounted a note or notes for the benefit of Wilson and Booth, by the consent, knowledge or acquiescence of Booth, then, on the testimony, the publication in the Journal of Commerce of the dissolution of the firm would be sufficient notice to the bank, and Booth could not be holden as indorser.

The judge refused to charge either of these propositions and the defendant duly excepted. No exceptions were taken to the charge as given to the jury. The verdict was for the plaintiff.

A motion for a new trial was made at the circuit and denied. The defendants appealed to the General Term from the judgment, and from the order denying the motion for a new trial.

The judgment was affirmed at the General Term, and the defendants Booth and Mudgett appealed to the Court of Appeals. The case below is reported, 45 Barbour, 663.

*Henry L. Clinton,* for Mr. Mudgett.

*E. T. Schenck,* for Mr. Booth.

*J. J. Townsend,* for the bank.

LEONARD, C. The facts having been found, under the charge of the judge, to which no exception was taken, against the defendants, unless he has erroneouly guided the jury to the formation of their verdict, by the admission of illegal evidence, or the exclusion of such as should have been admitted, or by the omission to give proper instructions as to the law, when requested, the plaintiff is entitled to recover.

The requests for instructions to be given to the jury are based upon an assumed absence of such prior dealing between the bank and the firm of Wilson & Booth, as would require an actual notice of dissolution, or upon the legal effect to be given to the publication of the notice, prior to the indorsement and discount of the note in suit. The authorities cited are applicable only in that aspect. The firm of Wilson & Booth was dissolved; a new member admitted; the firm name changed; and public notice given by a newspaper advertisement, on the 4th of May, 1863. The note was made by Mr. Wilson to his own order, indorsed by him and by Mr. Mudgett, on the 30th of the same month. It was also indorsed by Mr. Wilson with the firm name, on the same day, but not until after it had been shown to the president of the bank, and an application made to him to discount it.

In behalf of Mr. Booth, it is insisted that these facts have established three indisputable legal conclusions.

1st. That the note was not discounted on the credit of his firm, even if the plaintiff believed it to be for their account.

2d. That the burthen of proof rested on the plaintiff to show that the firm had assented to the use of their name or had adopted the transaction.

3d. That the publication of the notice was sufficient to exonerate him from liability to the bank on this note, as a member of the firm, unless the bank had previously discounted a note or notes for the firm with his consent, knowledge or acquiescence.

These positions exclude or give no weight to the other dealings of the bank with his firm during the preceding year. The plaintiff was the banker of Wilson and Booth as a firm, receiving and entering in their pass-book frequent deposits of money, against which checks were drawn, in the name of the firm, and paid by the bank; on some occasions, many times in a day. This dealing was a continual acknowledgment and proclaiming of the copartnership, by both members, during its existence. No notice of any limitation of the usual power or authority of either member to bind the firm, by the use of its name, was given, either actually or constructively. The indorsement of notes, and procuring discounts, are among the ordinary banking transactions of most partnerships. It appears that the firm deposited and drew considerable sums in the daily course of their business as custom-house brokers. The plaintiff was to furnish the capital required; but the bank were not informed of that. There is nothing in the nature of the dealing with the bank, or the business of the firm, so far as it is proven to be publicly known, which limits the duty of the bank in giving credit to the firm, in any ordinary banking transaction, so far as I am able to perceive. I can see nothing requiring the bank to discredit either member of the firm, or their usual authority as such, at the time of the discount. The weight of authority is, in my opinion, in favor of requiring actual notice of dissolution, to limit the continuation of transactions on the credit of the firm, where an established course of banking business, by the deposit of money and drawing of checks,

exists between a bank and such of its customers as constitute a firm of two or more members, where capital is used or required to carry on the business. (*Vernon* v. *Manhattan Co.*, 22 Wend., 183; *National Bank* v. *Norton*, 1 Hill, 572; *Clapp* v. *Rogers*, 12 N. Y., 283.)

There may be instances where no capital is required by the nature of the business of the firm. In such a case, notice of dissolution might not be required, where the firm transactions had been confined to the deposit and drawing of money. But that is not this case. The business of many brokers does require the use of capital. It may be inferred that capital was required in the business of this firm, inasmuch as it is proven that one member was to furnish what should be required by the firm.

The judge could not have given the instructions called for, or either of them, without disregarding the application to this case of the principle before mentioned.

The fact that there had been other discounts of paper for the same firm, indorsed with the firm name, which appeared on the pass-book, and went into the account of the firm as cash, would render the third request unavailing.

No authority has been cited to sustain the first or second propositions, as applicable to the facts stated.

For the reasons before stated, the motion to dismiss the complaint was properly denied.

None of the exceptions, taken by counsel for Mr. Booth, to the admission or exclusion of evidence, have been urged, and it is unnecessary to refer to them.

The following questions have been argued by counsel for Mr. Mudgett. 1st. It is said that the certificate of the notary does not prove a proper service of the notice of protest.

The objection at the trial was on the ground that it was not admissible. At least the objection is general to its being read in evidence, which, as I understand it, relates only to the admissibility. That ground is clearly untenable, as the statute makes it *prima facie* evidence of such facts as are stated in the certificate. (Sess. L. 1833, chap. 271, § 8; 3 R. S., 5. Ed., 474, § 35.)

The defective manner of the service is the question argued by counsel. That does not appear by the case to have been mooted at the circuit. No evidence bearing directly on the manner of the service was produced, except such as appears incidentally from the trial of the issue as to the genuineness of the signature. For instance, it is not shown whether Mr. M. had any private office, although it is in proof that he is a lawyer. His public official duties, it may be assumed, required his daily attendance at the custom house. He might have furnished the court, had his attention been directed to the manner of the service or its sufficiency, with proof as to the place were he usually received his letters. In the absence of a specific objection, which would have enabled the plaintiff to see the necessity of furnishing any additional evidence, bearing on the sufficiency of the service, I think it should be held, as it was at the General Term, that the evidence is *prima facie* sufficient.

There is nothing that we can judicially know, which renders it impossible for Mr. M. to receive his private letters at his desk in the custom house. Service may be made at the place of business, as well as at the domicil. If that was his place where he received his letters, it was as necessary for him to take care that a person was in attendance in his absence, as it would be at his private office. And the service upon a person in charge would then be good. (*Crosse* v. *Smith*, 1 Maule & S., 545, p. 554; *Mech. Bk'g Ass'n* v. *Place*, 4 Duer, 218.) It is said that the custom house is not the place of business of any private individual. Concede that, and it will not follow that no private business or letters can be transacted or received there. The defendant did indorse the note in suit at his desk there. The case of the *Bank of U. S.* v. *Corcoran*, cited by counsel for defendant, shows that a postmaster transacted his private business at the post-office, and if the notice of protest in that case had been left there, instead of at another room in the same building, it would have been sufficient.

The defendant requires the court to infer all the facts

against the plaintiff, notwithstanding his omission to state the defect at the trial, or to offer any evidence tending to prove that better or more suitable service could have been made. In this respect he mistakes the rule.   The facts stated in this certificate must be held to constitute, *prima facie*, good service.

2d.  The defendant Wilson was examined as a witness for the plaintiff, to prove the signatures on the note, and after he had been cross-examined, he was asked on the re-direct, if he advertised in the papers at Chicago, and answered "yes, sir." Counsel for the defendant moved to strike out this answer, and to the ruling of the court, denying the motion, excepted. This witness had been interrogated, on the cross-examination, in regard to his leaving the city of New York, and the places where he had visited, and his return with a police officer on a charge of forging the note in suit, and had testified that he had been to Chicago, and other places, and had returned to New York in company with a police officer, on the said charge. The inference might have been drawn that he had absconded from New York, and concealed himself during his absence. The evidence, which the defendant moved to strike out, tended to remove such an inference.   The cross-examination tended to impeach the character of the witness, and the evidence objected to was material to rebut, and was not supporting evidence in chief, without his being assailed.   It was material and proper in this respect, and made so by the previous cross-examination.

3d.  Calhoun, a deputy collector of customs, at New York, occupying the same room with the defendant in that department, called by the plaintiff to prove his hand-writing, having stated on the direct, that it was his impression that the writing was Mr. Mudgett's, was asked on the cross-examination, "would you take it against his denial of the signature?" The question was disallowed, on objection by the plaintiff, and the counsel for the defendant excepted.

The inquiry was purely hypothetical, predicated on no known or authenticated fact.  It called for belief or an opinion,

on a subject as to which no one can be called an expert. Whether answered affirmatively or negatively, it would be immaterial. No witness can tell what he would have done in such a case. It calls for mere speculation and vague belief. The answer might create some doubt with a weak juror, or be the foundation of an *ad captandum* argument, although wholly immaterial as evidence.

The ruling was very proper.

4th. Bausch, a witness for the plaintiff, testified that he was an assistant appraiser in the custom house, slightly acquainted with Mr. Mudgett, knew his handwriting, and thought the indorsement to be his. On his cross-examination, he stated that he became acquainted with the signature by seeing it to invoices which came from the custom house. The witness was then asked, on the re-direct, the following question:

"In the course of your official duties, are you called upon to pass and act upon the signature of the deputy collector?" (meaning Mr. Mudgett.)

*Answer.* "Every day."

*Question.* "How many times a day?"

*Answer.* "It may be from five to sixty."

The counsel for the defendants objected to each of these questions, and, being overruled, excepted.

This examination was material to show the means and extent of the knowledge of the witness, upon which his opinion as an expert was based. It is urged that it calls for a comparison as to the handwriting of different signatures by Mr. Mudgett. That is remotely probable; but not more so than every opinion on that subject. The evidence also shows the opportunity which the witness has had to form an opinion; and, for that purpose, the evidence was properly admitted.

5th. Counsel for the defendant produced a number of checks on a bank, which, it was alleged, were drawn by him, and proposed to inquire of certain witnesses whether the signatures to them were in the handwriting of Mr. Mudgett. The court refused to allow the inquiry; and the defendant's counsel excepted. It is said that the inquiry was not for the pur-

pose of comparison, which would be inadmissible, nor for exhibition to the jury; but for the purpose of testing the knowledge and accuracy of the witnesses. Two of the witnesses were produced by the plaintiff, and were then on cross-examination. It could be no test, unless other witnesses were also called to prove their genuineness. No precedent can be found for such a test. If allowed to call witnesses to prove these checks, others might be called by the plaintiff to prove the contrary. Such a proceeding would involve the trial of an issue wholly collateral to the main question. If the witnesses should pronounce them to be genuine, the evidence would be wholly immaterial, or would then degenerate to a comparison of signatures, and, perhaps, to their exhibition to jurors not expert in handwriting. If the witnesses said, on the contrary, that they were not genuine, it would be inadmissible to contradict them, on such a collateral issue, by showing that they were, in fact, genuine. In the aspect in which the evidence was urged, the checks were immaterial as evidence. In any view, they were inadmissible.

The question addressed to the other witness (Potter), as to the genuineness of certain other signatures to notes which were made by the defendant, to the certain knowledge of the witness, was for the purpose of comparing them with the indorsement in question. Like the inquiries addressed to the two former witnesses, it was for the purpose of comparison, or raised collateral and immaterial issues.

The principle is sound, that the trial must be confined to the issues in the cause. The case of *Van Wyck* v. *McIntosh* (14 N. Y., 439), is authority directly applicable, both as to the inquiries sought to be addressed to the two witnesses on the cross-examination, and to the one last mentioned, on the direct, fully sustaining the views here expressed.

The judgment should be affirmed.

All concur for affirmance.

Judgment affirmed, with costs.