JOHN H. ROSS, APPELLANT, *v.* CORNELIUS P. ROSS AND ANOTHER, EXECUTORS, ETC., RESPONDENTS.

*Code,* § 399 — *services rendered — presumption as to promise to pay for.*

In an action brought by a physician, to recover for services rendered to defendants' testator, he was asked whether he treated the testator professionally within the six years next preceding his death. *Held,* that the question was properly excluded, as inadmissible under section 399 of the Code.

Where it appears that for a portion of the services included in the account no charge was intended to be made, it cannot be presumed that it was intended to charge for the others. In this respect, one part of the account cannot be legally distinguished from the other.

APPEAL from a judgment in favor of the defendant, entered upon the report of a referee, made upon a reference of a claim against the estate of the defendants' testator.

*N. A. Halbert,* for the appellant.

*Chas. H. Glover,* for the respondents.

DANIELS, J.:

The claimant and appellant is a son of the testator, and claimed compensation from the executors of his estate for services performed by him as a physician, in attending upon and prescribing for the testator and his wife. To sustain the claim made, he was sworn as a witness, and asked whether he treated his father professionally within the six years next preceding his death. He was objected to as incompetent to answer the question under section 399 of the Code of Procedure. The objection was sustained, and an exception taken to the decision of the referee, and that exception is now relied upon in support of the application made on the part of the appellant for a reversal of the judgment. But it is very clear that the inquiry made related to a personal transaction between the witness and the deceased testator, upon which he was not competent to give evidence, according to the section of the Code just referred to. If the evidence could have been taken, the direct tendency of it would have been to prove that he performed service about his

father's person, from which the law might imply a promise on the part of the latter to pay, while, if he were living, his own evidence might disprove both of such facts. The policy of section 399 is to prevent the estates of deceased persons from being rendered liable by evidence of that description, proceeding from the surviving party to such a transaction. Where that has been had personally with the deceased, the liability of the estate on account of it, if established at all, must be shown by the evidence of persons who are not parties asserting and endeavoring to sustain the claim made. The rule is a very salutary and proper one, and it has been rigidly adhered to in the administration of the laws, and, under it, the question was very properly overruled. (*Dubois* v. *Baker*, 40 Barb., 556, 562; *Stanley* v. *Whitney*, 47 id., 586, 588; *Dyer* v. *Dyer*, 48 id., 190; *Resseguie* v. *Mason*, 58 id., 89; *Elmore* v. *Jaques*, 9 S. C. [2 Hun], 130; *Howell* v. *Van Siclen*, ante, p. 115.)

When the evidence of the claimant was rejected upon this portion of the claim made by him, he was allowed to state that he visited and attended his mother, as her physician, nine different times in 1871 and 1873. At that time he lived in Brooklyn, and she resided with her husband, the testator, in Plainfield, New Jersey. He also stated that he made an entry after each visit in his pocket-diary, charging ten dollars for it, and that each visit was reasonably worth that sum. He stated that he was requested by his four brothers to make such visits, but they were sworn as witnesses and denied that statement. It was also proved that the claimant's mother was attended by Dr. Stillman, a physician who, at the time, resided at Plainfield, and that he himself, on one occasion, went to procure his attendance for her. It was not shown that the testator knew, that the claimant attended his wife in his professional capacity as a physician, or that he in any way whatever, sanctioned or approved of such attendance. And it was proved that on two several occasions, after a portion of the alleged visits had been made, that he borrowed money from the testator, and gave his note for one loan of $2,000, and his bond for another of the same amount. The referee found that no promise could be implied from these facts, on the part of the testator, to pay any part of the claim made and reported in favor of the executors.

The claimant excepted to the report for the reason, that a promise to pay him should have been implied and judgment directed in his favor. It is difficult to discover how the referee could have made any different decision than he did. The testator was not shown to have even known of the professional visits, alleged to have been made ; and he had provided his wife with another physician who had attended her at Plainfield, and of whose employment the present claimant was not ignorant. That was all which, under ordinary circumstances, the testator was bound to do. And his wife did not appear to desire any thing further, for it was not pretended that she had requested the claimant to attend her in his capacity of a physician. The only employment he claimed has been made, was by the request of his brothers, which they all denied making. Then, if he had really designed to have charged the testator for the visits made by him, those which preceded the loans should have then been brought forward and adjusted. The presumption is, that he would then have presented his account for payment if he in truth considered the testator to be his debtor. He wanted money, and if it could be in part secured by collecting a debt, and in that way reducing the amount he otherwise required to borrow, the natural course would have been to resort to that alternative. That he did not then make any claim was a circumstance subjecting the one made to the executors to very serious suspicion, and, together with the other facts appearing, fully justified the referee in rejecting it. The probability that he expected to be paid by his father for his professional visits to his mother, or that she expected that any charge would be made by him for them, is very slight, when unaffected by any other fact than his filial relationship. And with the others, appearing from the proof, that probability has been completely overcome. If the services were performed at all, they were undoubtedly bestowed by the claimant in obedience to his manly impulse to serve and benefit his mother, by generously doing for her whatever his skill and experience enabled him to perform, and without the expectation of pecuniary recompense from her, or his father's estate. The claim made for payment was probably an after thought, which he mistakenly supposed could be rendered successful. But in that respect the law will not sustain him.

His own conduct is sufficient to defeat the portion of the demand

accruing before the loans were made, and there is nothing in the evidence tending to show the remainder to be in any respect of a mere meritorious character. If there was no design to charge for the former, it cannot be presumed that there was for the latter. In this respect, one part of the account cannot be legally distinguished from the other, and for that reason no promise to pay either can be reasonably implied. (*Williams* v. *Hutchinson*, 3 Comst., 312, 317, 318.) In *Moore* v. *Moore* (21 How. Pr., 211), which in its leading features closely resembles the present case, Judge WRIGHT, in delivering the opinion of the Court of Appeals, held that "ordinarily, from the fact of rendition and acceptance of services beneficent in their nature, the law will imply a promise to pay what the services are reasonably worth. This implication may not be repelled wholly by the fact that the service is rendered to a parent by a son less of full age, but the legal presumption of an obligation to pay is strong, when the relation of parent and child exists, than in the case of dealing between persons not bound to each other. If to the relationship be added other circumstances tending to show, as a matter of fact, that the services were gratuitously rendered, and without any expectation, at the time, on either side, that payment was to be made, the law will not imply a contract for compensation. (Id., 223, and *Candoss' Appeal*, 5 Watts & Serg., 513 ; *Bowen* v. *Bowen*, 2 Bradf., 336; and *Estate of Kelley*, Tucker, 28, are to the same effect.) This principle is entirely controlling in this case, and the judgment should be affirmed, with costs.

DAVIS, P. J., and BRADY, J., concurred.

Surrogate's decree affirmed with costs to the respondents, the executors.