EMMA E. DRYER, RESPONDENT, v. ELON G. BROWN, AS SURVIVING EXECUTOR, ETC., OF HARVEY BARNARD, DECEASED, APPELLANT.

*Evidence of want of pecuniary means — when competent as against a party seeking to recover an alleged loan — waiver by an executor of the defense of the statute of limitations — examination of an expert as to handwriting.*

In an action, brought to enforce payment of notes made by a decedent, against his executor who interposes the defenses of usury and of a want of consideration, evidence on the part of the defense tending to show that the payee of the note, who is alleged in the complaint to have loaned the money constituting the consideration therefor to the decedent, was not possessed of any property or money, and had not the pecuniary means to make the loan, is competent.

*Nicholls* v. *Van Valkenburgh* (15 Hun, 230); *Pontius* v. *People* (21 id., 331; affirmed, 82 N. Y., 339) followed.

*Quære*, whether an executor can, by stipulation, waive the defense of the statute of limitations existing against a claim created by the decedent in his lifetime.

The degree of latitude which will be allowed in the examination of an expert witness, called to testify as to the genuineness of handwriting, considered.

*McKay* v. *Lasher* (19 N. Y. St. Rep., 816) followed; *Hynes* v. *McDermott* (82 N. Y., 49) distinguished.

APPEAL by the defendant from a judgment, entered upon the report of a referee in the Oneida county clerk's office August 27, 1888, after its confirmation at the Oneida Special Term, by an order entered in said office August 24, 1888, and from an order, entered in said office August 24, 1888, refusing to set said report aside.

Harvey Barnard died in April, 1883, leaving a will, which was

admitted to probate, of which the defendant Brown is the surviving executor. In February, 1884, the executor advertised, in accordance with the statute, for the presentation of claims against the estate. About March 4, 1885, the plaintiff presented to the executor a verified notice of her claims against the estate, consisting of four promissory notes mentioned in the findings of fact by the referee hereinafter set forth. The executor rejected the claims and refused to pay the same. On the 6th of May, 1885, the plaintiff and the defendant entered into an agreement " that the said matter in controversy be referred, pursuant to the statute." That agreement named a referee; upon it was indorsed the approval of the surrogate of Oneida, bearing date the 6th of May, 1885, approving " of the person named as referee in the foregoing agreement." Subsequently, and on the 30th of April, 1887, the attorneys agreed by stipulation upon another referee " to hear, try and determine " the issues, and that either party might enter an order to that effect. Thereupon an order was entered referring the issues to the referee who heard and determined the same. It does not appear that the surrogate ever approved of the substituted referee. On the 14th of May, 1885, the attorneys entered into the following stipulation : " It is hereby stipulated by and between the parties and their attorneys, in the above-entitled matter, that the claimant shall serve a complaint setting forth her claim, and the defendant herein shall serve an answer in the same manner and subject to the same rules of law as though the action was pending upon service of summons in the Supreme Court, and that the issues, generally, shall be submitted to a referee and the cause tried therein and thereunder with the same force and effect as though the action was pending in the Supreme Court, excepting the subject of costs." Thereafter an amended complaint and answer were served, joining issues, which were tried before the referee.

The answer contained a denial of the allegations of the complaint, and also set up " that the signatures thereto are not the genuine signatures of the said Harvey Barnard, deceased, and were not made by him in his lifetime, and that said notes are not the genuine notes of the said Harvey Barnard, and were never delivered by him to the said plaintiff as his genuine notes, or at all ; and the said notes are and were inoperative and void, and without consideration therefor whatever, and each and every one of said notes was and

is void and without consideration. * * * That said plaintiff gave to said Harvey Barnard, in his lifetime, no consideration therefor, or for either of said notes, and that each of the said notes is illegal and void and without consideration."

The referee found that Harvey Barnard executed a promissory note for $500, dated December 25, 1875, to the plaintiff; another promissory note, dated December 25, 1876, for $500, payable to the plaintiff; another promissory note dated June 4, 1881, for $2,000, payable to the plaintiff, and on June 3, 1882, another promissory note for $5,000, payable to the plaintiff. The first two notes mentioned above were non-negotiable and the last two were payable to the plaintiff or order.

*Edward D. Matthews*, for the appellant.

*Sayles, Searle & Sayles*, for the respondent.

HARDIN, P. J. :

Plaintiff gave evidence upon the trial tending to establish the genuineness of the signatures of the deceased to the several promissory notes mentioned in the report of the referee, and the defendant gave evidence strongly tending to indicate that the notes were forgeries, and were not executed or delivered by the deceased to the plaintiff. The issue of fact was so closely contested as to whether or not the signatures were genuine or not, as well as to whether the notes were delivered, if genuine, for any consideration to the plaintiff, that we are of the opinion that any erroneous ruling that may have been made by the referee cannot be said not to have prejudiced the party against whom the determination was made.

During the trial the plaintiff was put upon the stand to contradict the testimony of Mr. Miller and Mr. Williams, two very important witnesses for the defendant. She denied explicitly essential points of their testimony in regard to the notes and the several interviews which they detailed having had with her in respect thereto. During the course of her cross-examination, the defendant offered " to show that she had no property," thereupon the referee remarked : " I think it is too remote," and then the case shows that the objection was sustained and an exception was taken by the defendant. We think the testimony was competent.

In *Darling* v. *Westmorland* (13 Am. Rep., 71) the court said, viz. : "In an action on a note alleged to have been given for money loaned, the defense being that the note is a forgery and the loan a fiction, evidence tending to show the payee's want of means to make the loan, and evidence tending to show that the payee was a borrower of money, is admissible." (*Wiggin* v. *Plumer*, 31 N. H., 251; *Demeritt* v. *Miles*, 22 id., 523; *Angier* v. *Ash*, 26 id., 99.)

In the case of *Nicholls* v. *Van Valkenburgh* (15 Hun, 230) it appears that an action was brought against executors upon a promissory note, and that the answer interposed "was a general denial, payment, want of consideration, and that the note was made solely for the accommodation of the said Borst, the payee." The defense was sought to be sustained by circumstantial evidence, "in the course of which the defendant gave in evidence many circumstances tending to show the financial situation of Martin I. Borst, and also of D. A. Van Valkenburgh, at and about the time when the note purported to have been made; and afterwards, after the note, by its terms, purported to have become due and remained unpaid, with a view not only of showing, from the transactions of the parties, the probability that the note was signed at the time and for the purpose claimed by them, but also of showing by inference the improbability that, if the note represented an actual and *bona fide* claim against Van Valkenburgh in favor of Borst, it would have been permitted by the latter to have remained overdue, and without any demand of payment or attempt to collect the same in the lifetime of Van Valkenburgh." Both descriptions of testimony of this character were taken under the objection of plaintiff's counsel as to inadmissibility for the purpose of showing the financial position of the parties, and on the ground that it was wholly irrelevant to any of the issues in the case. Judge TALCOTT, who delivered the opinion in that case, said : " The evidence admitted was offered as only one of the various circumstances tending to establish the fact that the alleged note did not represent an actual and valid claim of Borst against Van Valkenburgh, and we think, in this case, it was properly admitted for the consideration of the jury, together with the other evidence bearing on the subject. (*Waddell's Admr.* v. *Elmendorf's Admrs.*, 10 N.Y., 171; *Burlew* v. *Hubbell*, 1 T. & C., 236; *Stevenson* v. *Stewart*, 11 Penn., 307; examined in *Woods* v. *Gummert*, 67 Penn. St., 136; and

the remarks of the chancellor and Senator MASON in *Miller* v. *Smith's Exr's.*, 16 Wend., 425.) The precise question presented by these objections seems to have been considered, and the objections overruled in a recent decision of the Supreme Court of Illinois. (*Thorp* v. *Goervey*, The Reporter, vol. 5, No. 21, p. 619, May 22, 1878.)"

A similar question arose in this court in the case of *Pontius* v. *People* (reported in 21 Hun 331; S. C., affirmed, 82 N. Y., 350), and SMITH, J., remarked in regard to the question, viz.: "Testimony as to the pecuniary condition of the defendant was not irrelevant." The same case was referred to approvingly in *Poucher* v. *Scott* (33 Hun, 225). In Abbott's Trial Evidence (at page 247, section 21) it was said, viz.: "If the making of any loan whatever by plaintiff is denied, evidence of his poverty at the time is competent as tending to disprove it."

In the answer served there was no defense of the statute of limitations. The Code provides that that defense must be taken by answer. (Code of Civil Pro., § 413; *Dezengremel* v. *Dezengremel*, 24 Hun, 457.) It is insisted, in behalf of the appellant, that, as the reference under the statute is a special proceeding, that any defense is allowable. The respondent replies that the parties have by their own act, evidenced by their stipulation, consented that the issues to be tried shall be such as are embraced within the pleadings. It is competent for a party to waive a statutory provision in his behalf, but as this is a proceeding not against Brown in his individual capacity, it may be questionable whether he could bind the persons interested in the estate rightfully by a waiver of the statute of limitations; however that may be, the conclusion we have reached on the other branch of the case renders it unimportant to pass upon that question at this time. If the defendant shall be advised that the stipulation ought not to remain, or that he had no right to waive the statute of limitations as a defense, and in doing so has exceeded his authority as an executor, and can make a proper case for relief from the stipulation, he should present such case to the Special Term and ask to vacate the stipulation, or to be at liberty to amend his answer, setting up the statute of limitations. (Dayton's Surrogate, 318; Willard on Executors, 317; *Wilcox* v. *Smith*, 26 Barb., 355.)

When the witness Daniel T. Ames, an expert in handwriting, or "a pen artist," was being examined, it appeared that he had studied very extensively the signatures of Barnard upon genuine instruments, and on the alleged signatures upon the notes in question, and he was asked by the defendant, viz. : "From your examination, what do you find the nature and characteristics of Barnard's handwriting, as indicated by the exhibit referred to on your traces?" This was objected to by the plaintiff as incompetent, improper and calling for a conclusion of the witness as to what is the characteristics of Barnard's handwriting. The referee remarked, viz. : "I think that is too broad." Thereupon the defendant took an exception. In another part of his evidence the witness said: "I will refer first to the capital 'H' in the signature ; taking the 'H' of the $5,000 note, I find a letter beginning (witness refers to his blackboard, and asks to be allowed to illustrate thereon his meaning and evidence)." The plaintiff objected. The referee remarked, viz. : "Why refer to the blackboard ?" Again the witness was asked, viz. : "His handwriting and characteristic, then, was to commence the 'H' on which side ?" The witness answered: "The rule is no initial whatever, but more frequently to the right." The plaintiff's counsel moved to strike out the answer, and the referee remarked, viz. : "I think the objection is good." An exception was taken by the defendant's counsel. Again, the witness said "that there are no extreme and radical departures from the customary length or habitual length of the genuine signatures. State the same as to initial sweeps." The plaintiff objected to it as incompetent and improper. The referee sustained the objection, and defendant took an exception.

Again the witness was asked : "Can you illustrate upon the black-board and show more clearly the difference which you point out between the disputed and genuine signatures ?". That question was objected to as improper and immaterial. The witness answered : "I think so." Thereupon the defendant's counsel asked the witness the following questions : "I will ask you to illustrate upon the blackboard the difference which you have specified, the chief ones ?" This was objected to and the objection was sustained and the defendant took an exception.

We think the referee did not allow the latitude usually indulged in the examination of an expert witness, nor follow the rule approved

in *McKay* v. *Lasher* (19 N. Y. S. Rep., 816). In that case the court observed, viz. : " The next objection is that an expert witness was allowed to explain upon a blackboard his meaning and the reasons for his opinion. We think there was no error in this. Of course the whole class of expert evidence is exceptional. And as experts are to give opinions, it is right that they should explain the reasons for them. " (See *Roe* v. *Roe*, 8 Jones & Spencer 1; *Dubois* v. *Baker*, 40 Barb, 562 ; S. C., affirmed, 30 N. Y., 355 ; *Bank of Commonwealth* v. *Mudgett*, 44 id., 523.) Chapter 36 of the Laws of 1880 provides as follows : " Comparison of a disputed writing with any writing proved to the satisfaction of the court to be genuine, shall be permitted to be made by witnesses in all trials and proceedings, and such writings, and the evidence of witnesses respecting the same, may be submitted to the court and jury as evidence of the genuineness, or otherwise, of the writing in dispute." (*Hilsley* v. *Palmer* 32 Hun, 474 ; *Peck* v. *Callaghan*, 95 N. Y., 73.)

There is nothing in *Hynes* v. *McDermott* (82 N. Y., 49) adverse to the views already expressed. In that case the originals from which the copies were made were not brought before the court, and there was no proof of the exactness from the photographic copies, and it was there remarked, viz. : " An expert in handwriting, when speaking as a witness only from a comparison of handwriting, that is, with two pieces of it in juxtaposition under his eye, should have before him in court the writing to which he testifies and the writings from which he testifies, else there can be no intelligent examination of him either to chief or cross ; nor can there be fair means of meeting his testimony by that of other witnesses." *Remington Paper Company* v. *O'Dougherty* (81 N. Y., 487) was tried before the passage of chapter 36 of the Laws of 1880.

We are of the opinion that the preponderance of evidence is with the defendant in respect to what transpired between the plaintiff and the witness Miller, and the witness Williams, at the time she exhibited notes to them referred to in their testimony, and that the refusal of the referee to find in accordance therewith was a refusal to find in accordance with the weight of the testimony upon the subject of those interviews.

While we recognize the rule that it is within the province of this court to examine all the evidence bearing on the disputed questions

of fact, and determine whether the report of the referee is in accordance with the weight of evidence (*Finch* v. *Parker*, 49 N. Y., 1), yet, inasmuch as the conclusion which we have reached in the preceding part of the opinion will lead to a new trial where the questions of fact must be fully presented upon the testimony already given, as well as upon such as either side may produce in addition thereto, we do not think it opportune to pass upon the main questions of fact involved in the issues between the parties.

We think the judgment and order should be reversed, and a new trial ordered before another referee, with costs to abide the event.

MARTIN, J., concurred; MERWIN, J., not sitting.

Judgment and order reversed, and a new trial ordered before another referee, with costs to abide the event.