65   342
139a 514

THOMAS McLOGHLIN AND ANOTHER, AS EXECUTORS OF B. F. McLOGHLIN, DECEASED, RESPONDENTS, *v.* THE NATIONAL MOHAWK VALLEY BANK, APPELLANT.

*Banks — an agreement to pay interest on a deposit — not discharged by notice, if there be no payment or tender by the bank — what facts relating to the probability or reason of an act being done may be proved.*

In 1853 B. F. McLoghlin deposited money with a State discount bank upon an agreement that he was to receive interest thereon at three per cent. His deposits continued until May, 1865, when there was due him $2,511.31. In 1865 the State Bank became a national bank. In 1867 the president of the bank told McLoghlin, in substance, that he must draw his money, that the bank could pay no more interest. In 1869 the cashier said the same thing to McLoghlin, who said that he would leave his money there until he could get some other place to put it. To this the cashier said: "All right, you can have your money at any time you want it." The bank never tendered or paid the deposit, nor was the bank in any form released from its original agreement to pay interest. McLoghlin died, and in 1889 his executors demanded the deposit and interest thereon at three per cent.

*Held,* that the original agreement was still in force and they were entitled to recover.

As bearing upon the improbability of the defendant's proposition that their testator had left his money in the bank for more than twenty years without expecting interest, the executors were allowed to show the value of the use of money in that vicinity; that the testator had money deposited in other banks which paid him interest, and that a bank had offered him the usual rates for any money he might have to deposit.

*Held,* that the evidence was competent.

The cases bearing upon this kind of evidence, reviewed.

APPEAL by the defendant, the National Mohawk Valley Bank, from a judgment of the Supreme Court, entered in the office of the clerk of the county of Cortland on the 4th day of December, 1891, in favor of the plaintiff for $4,500.28, with interest and costs, after

a trial before a referee, with notice of an intention to bring up for review on such appeal the rulings of the referee, the exceptions thereto, the findings of the referee and his refusals to find.

The plaintiffs, the executors of B. F. McLoghlin, in 1889, at the defendant's banking-house, and subsequently in their complaint served the same year, demanded payment of a deposit and interest made by the plaintiffs' testator in the defendant's bank.

The appellant, a national bank, was duly organized as such April 1, 1865. Prior to its organization as a national bank, and from the year 1852, until it became such, the appellant was a State bank, organized under the laws of the State of New York by the name of "Mohawk Valley Bank." When the appellant changed its organization from that of a State bank to that of a national bank it took and succeeded to all the business, property, assets, franchises and good will, and assumed and incurred all the liabilities of the said Mohawk Valley Bank.

On July 8, 1853, the plaintiffs' testator opened an account with the appellant and became a depositor, depositing with it moneys from that time until about May 25, 1865, and from time to time drew checks, which were paid by the appellant.

On the 25th of May, 1865, there was a balance due on said account to the testator amounting to the sum of $2,511.31. Between the opening of said account and the 25th of May, 1865, the appellant and the Mohawk Valley Bank had allowed the testator interest upon his deposit and balance of account, and had, at intervals, paid such interest by entering the amount thereof in said account and giving the testator credit therefor. The testator's deposits were made with the appellant and its predecessor upon the understanding and agreement that the testator should be paid interest thereon and upon the balance thereof. On the 25th of May, 1865, the appellant's indebtedness to the testator was an interest-bearing account or indebtedness, bearing interest at the rate of three per cent per annum or upwards, which was payable to the testator upon demand, or at the option of the appellant.

In the year 1867 the testator had an interview with one Burgess, president of the appellant, in the presence of Lowell and Vickerman, who were directors of the appellant. On that occasion the president said to the testator in substance: "You must draw your money.

We can pay no interest." To which the testator replied that the
bank would be crippled by the defalcation, and they could afford to
pay him interest; that it was not necessary for him to have the
money. The president answered that it was contrary to the rules
of the bank to pay interest; that the bank did not pay interest on
deposits, and he must withdraw his money; that they could pay no
interest. After this, and about the year 1869, the testator said
to the cashier, H. D. Alexander, that he had called there some time
ago and talked about his deposits with the old gentleman in the
back room, who said that they could not pay interest. Mr. Alex-
ander replied : " That is so, we do not pay anybody interest now.
If you desire to deposit your money where they pay interest, you
had better take it to a savings bank." The testator said he would
leave his money there until he could get some other place to put it.
Mr. Alexander answered : " All right, you can have your money
any time you want it."

The appellant never paid, tendered or attempted to pay to the
testator, or to any one for him, during his lifetime, the balance of
$2,511.31, or the interest thereon or any part thereof. No con-
tract or agreement was made between the appellant and the plaint-
iffs' testator changing the account from an interest-bearing to a
non-interest-bearing account or debt, nor was there any agreement
by which the appellant was released from its obligation to pay
interest upon the account. Before this action was commenced the
plaintiffs duly demanded the balance of $2,511.31, and interest
which had accrued thereon. The appellant offered to pay $2,511.31
in full of its indebtedness, but refused to pay more, or to pay or
allow any interest upon that sum.

The foregoing facts were found by the referee, who held that the
plaintiffs were entitled to recover the sum of $2,511.31, with
$1,988.97 interest and costs, and directed judgment accordingly.

*J. B. Rafter*, for the appellant.

*William P. Goodelle* and *John Courtney, Jr.*, for the respondents.

MARTIN, J. :

The principal controversy between the parties related to the
interest upon the money deposited with the defendant by plaintiffs'

testator. The referee found that the money was deposited in pursuance of an agreement or understanding between the plaintiffs' testator and defendant, that interest should be paid on the testator's account. This finding was, we think, justified by the evidence.

The referee also found that there was no subsequent valid agreement changing the testator's account from an interest-bearing to a non-interest-bearing account, or releasing the defendant from its obligation to pay interest thereon. A careful examination of the evidence contained in the appeal-book has failed to disclose to us any such proof, that the agreement to pay interest was either terminated or modified by a subsequent one, as would justify us in disturbing the finding of the referee. While it may be said that the defendant evinced a desire, and perhaps a determination, to terminate the agreement to pay interest, still, we think, the evidence was such as to justify the referee in finding that that desire or determination was never carried into execution, and that the original agreement between the parties continued in full force. We, therefore, find no error in his conclusion that the plaintiffs were entitled to recover interest on the testator's account at the rate allowed.

On the trial, the plaintiffs claimed and gave evidence which tended to prove that an agreement existed between the testator and defendant by which interest was to be paid on the testator's account. The defendant, while substantially admitting that such an agreement had previously existed, gave evidence tending to show that that agreement was superseded or terminated by a subsequent agreement or understanding between the parties that no interest was to be paid. In answer to the evidence thus given by the defendant, the referee permitted the plaintiffs to prove, by several witnesses, the value of the use of money in the vicinity of defendant's bank; that the testator had money deposited in several other banks, all of which paid interest on such deposits; and that one of the banks offered him the usual rates (five per cent, when left on deposit three months or longer), for any money he might have to deposit. This evidence was objected to as improper, incompetent and immaterial. When the evidence was offered, the plaintiff stated that it was offered for the sole purpose of establishing that the

testator's account was an interest-bearing account, and rebutting the evidence of defendant's witnesses as to a subsequent agreement. The objection was overruled, and the defendant excepted. The validity of these rulings is one of the important questions in this case.

"It is relevant to put in evidence any circumstance which tends to make the proposition at issue either more or less improbable." (1 Whart. on Ev., 21.) In this case the defendant sought to establish the fact that its agreement to pay interest had been terminated by a subsequent agreement that no interest should be paid. To rebut the evidence of defendant's witnesses tending to establish that fact, the evidence objected to was admitted. Proof that during the time this deposit was held by the defendant the value of the use of money was at least equal to that received by the testator under his first agreement; that all of his money was deposited in banks and drawing interest, and that he was offered interest at "going rates" on all the money he would deposit in a bank where he resided, tended to show the improbability of the defendant's claim that the testator left the money in question on deposit in its bank for twenty years and more under an agreement that he should receive no interest therefor.

In *Burlew* v. *Hubbell* (1 T. & C., 235) the defendant, being pressed for money, applied to plaintiff's testator for a loan, which was promised, if defendant would give a note signed by himself and one F. Afterwards another person brought to testator a note, signed with the names of F. and the defendant, and received the money thereon. In an action upon such note, defendant denied the execution thereof; and it was held that evidence showing that the defendant, about the time he applied for the loan, procured from another source the amount he desired to borrow, was admissible to rebut the presumption arising from the circumstance that he was pressed for money.

In *Hotchkiss* v. *Germania Fire Insurance Company* (5 Hun, 90), where an action brought on a policy of insurance was defended on the ground that the insured had set the building on fire, it was held that evidence as to what had been offered for rent for the property was properly received as tending to show the value of the building, and that it was greater than the amount insured.

In *Pomeroy* v. *Pierce* (5 Hun, 119) the action was for legal services. One B. was the attorney in the suit. It was claimed that plaintiff was employed by B. with the consent and approval of the defendant. This was denied by the defendant, and he offered on the trial to show an agreement between himself and B. that B. should take charge of the case and conduct it for a sum agreed upon. The evidence was excluded. On appeal the court held that the evidence was admissible as bearing upon the probability of the employment of the plaintiff by the defendant.

In *Nicholls* v. *Van Valkenburgh* (15 Hun, 230), which was an action on a note made by defendant's testator, payable to the order of plaintiff's testator, and the defense was that the note was not used and was without consideration, it was held that evidence of the financial situation of the parties at the time the note was made, and at its maturity, was admissible to sustain the defendant's version of the transaction, and to show the improbability of its remaining over-due without a demand for its payment.

In *Wallis* v. *Randall* (16 Hun, 33; affirmed, 81 N. Y., 164), where the question was, whether a mortgage was transferred as an absolute payment of a debt of that amount or only as security there-for, it was held that evidence that at the time of the transfer the property covered by the mortgage was worth more than the amount of it and a preceding mortgage thereon, was admissible as tending to show that the transfer of the mortgage was intended as a payment.

In *Dishno* v. *Reynolds* (17 Hun, 137), an action brought to recover money paid to the defendant, it was held proper to show the payment to the plaintiff of money by a third person for the purpose of showing that the party had money from which the payment to the defendant might have been made.

In *Cornell* v. *Markham* (19 Hun, 275), it was held that evidence as to the value of services to be rendered was admissible as bearing upon the question whether a certain contract was made. The same was held in *Bean* v. *Carleton* (51 Hun, 318).

In *Pontius* v. *The People* (21 Hun, 328; affirmed, 82 N. Y., 339), where the defendant claimed that two notes were given to him in consideration of an indebtedness due him for borrowed money exceeding in amount that of the two notes, it was held that evi-

dence tending to show that the defendant was at that time embarrassed in his pecuniary circumstances and pressed by numerous creditors whom he was unable to pay, was admissible as tending to show that he had no money to lend.

In *Dryer* v. *Brown* (52 Hun, 321), an action brought to enforce the payment of notes claimed to have been made by a decedent against his executors, who interposed the defenses of usury and want of consideration, it was held that evidence on the part of the defendant tending to show that the payee of the notes, who was alleged in the complaint to have loaned the money constituting the consideration therefor to the decedent, was not possessed of any property or money and had not the pecuniary means to make the loan, was competent.

In *Quincey* v. *White* (63 N. Y., 370), which was an action against several persons upon an account arising from stock transactions claimed by the plaintiff to have been joint transactions on the part of the defendants, but claimed by one of the defendants to have been several, it was held that evidence that that defendant had a private account running at the time was competent as a circumstance tending to show that the other account was joint, and not several.

The authorities cited seem to uphold the doctrine that evidence of circumstances, which tend to make a proposition at issue between the parties improbable, is admissible to aid the court in correctly determining such issue.

It must be admitted that the correctness of the rulings under consideration is not wholly free from doubt, but we think the principle of the authorities cited justifies us in upholding them. There are other exceptions taken by the appellant, all of which we have carefully examined, but have found none that would justify a reversal or that need be discussed. These considerations lead to an affirmance of the judgment.

HARDIN, P. J., concurred; MERWIN, J., dissented.

Judgment affirmed, with costs.