Argued April 14; affirmed May 18, 1937

# ERVAST *v.* STERLING ET UX.

(68 P. (2d) 137)

*James Arthur Powers*, of Portland, for appellant.
*Arthur I. Moulton*, of Portland, for respondents.

ROSSMAN, J. The action which brought this appeal before us arose out of an automobile collision which occurred February 19, 1935, at 5:30 p. m., at the intersection of Sandy boulevard and Grotto road, which is three blocks east of the easterly boundary of Portland. Grotto road is a thoroughfare a few hundred feet long which merges with East 85th street where the latter enters Sandy boulevard. Neither crosses the highway. The automobile owned by the plaintiff, a Buick, was being driven by her 20-year-old son Elmer easterly on Sandy. At the intersection just mentioned it struck the Ford car driven by the defendant George A. Sterling, which was entering Sandy from the south on Grotto road. Elmer and others who testified for the plaintiff thought that the Buick was proceeding at a speed of about 30 miles per hour, and estimated the Ford's speed as 30 or 35 miles. Witnesses who testified for the defendants believed that the Buick was traveling at a speed of 50 or 55 miles per hour. At least one of the plaintiff's witnesses swore that the Ford did not stop before it entered the highway. The parties agree that Sandy boulevard is a through highway, and that it was the duty of the driver of the Ford to stop before entering it. Sterling and four others, three of whom were co-occupants with him of the Ford, swore that it stopped before it entered Sandy boulevard. Sterling declared that as he brought his car to a stop he cast his eyes in both directions along the highway and observed no car within the range of his vision. To his left, ow-

ing to a hedge, he could see no more than 200 or 300 feet along Sandy. It was from the left that the Buick was approaching. Sterling intended to turn to the left after entering the highway, which at that place is 45 feet wide, divided into five traffic lanes. Having found the way clear, he proceeded to enter and, after proceeding to a point where the hedge no longer obstructed his view, saw a car several hundred feet to the left which, it later developed, was the plaintiff's Buick. He swore that it was so far distant he thought it presented no danger and shifted into second gear. Upon reaching the center lane he discovered that the Buick was only 100 to 150 feet away and was headed directly toward him. He now "shot ahead as fast as I could" in order to get out of the way, but was struck by the Buick as he was headed for the north shoulder. If his testimony is true, he had abandoned his purpose of turning to the left and was headed directly across the roadway for the purpose of getting out of the course of the oncoming Buick. Most of the witnesses agreed that the collision occurred to the north of the center line of the pavement. Some of those who testified for the defendants swore that they heard a screeching noise made by what they described as the skidding tires of the Buick after its brakes had been applied. The collision was a very severe one, throwing the Buick a considerable distance after it had turned over and causing the Ford to spin about upon the pavement and finally come to rest at a point distant from the impact. Some of the evidence indicates that after Elmer saw the Ford he headed to the north for the purpose of passing in front of the latter, and then turned to the right. The Buick struck the left-hand side of the Ford near the driver's seat.

The day was clear and the pavement was dry. The Ford was a coupe with four passengers in its single

seat. The defendant George Sterling was behind the steering wheel. Next to him was seated his wife, the other defendant, and beside her was her brother with their sister seated in his lap. The evidence indicates that the two women were slight of stature, and the defendant swore that the presence of his three co-occupants did not interfere with his vision nor with the operation of the car.

The first assignment of error is predicated upon a contention that the trial judge erred when he did not enter special findings of fact upon all of the issues presented by the complaint's averments and the denials of the answer. The plaintiff does not contend that the findings of fact fail to state the court's disposition of the issues arising out of the plaintiff's denials of the defendant's charges. The complaint alleges that the defendant's car was operated at a dangerous rate of speed; that it contained more than three passengers in its single seat; that it was not under the control of the driver; that it failed to stop before entering Sandy boulevard; and that it failed to yield the right of way to other traffic. It also charges that the defendant George Sterling failed to maintain a proper lookout; that his wife Leona failed to see to it that the Ford was stopped before entering the highway, and that she otherwise failed to do her duty as one of the occupants of the car.

At the conclusion of the trial the plaintiff presented for signature special findings which, if signed, would have found that her charges were true. These were rejected and the trial judge signed findings prepared by himself. From them we quote:

"Before entering Sandy boulevard the defendants stopped their car at or near the point of the stop sign. * * * The defendant George A. Sterling was not

guilty of negligence in operating his car, but drove the same in a careful and prudent manner; that his wife, Mrs. George A. Sterling or Leona Sterling, was not guilty of any negligence; that the fact that there were four persons riding in the driver's seat of said Ford coupe, in violation of the motor vehicle law, did not contribute to said accident."

The plaintiff contends that § 2-502, Oregon Code 1930, requires the entry, upon request, of special findings. This section of our laws provides, in part:

"The decision shall consist of either general or special findings."

■■ It provides that any party to the controversy may request that special findings be entered, but does not require, expressly at least, that the judge must enter special findings. This enactment, in our belief, places special findings in the same category with special verdicts. Whether they shall be entered, we believe, rests in the sound discretion of the trial judge. It will be observed that the circuit court judge entered special findings which declare that the Ford stopped before it entered Sandy boulevard, and that the presence of four in the driver's seat was not a contributing cause of the accident. We have read the transcript of testimony carefully, and believe that these two issues were the principal ones upon which the plaintiff relied. The other issues are disposed of by the general findings. Thus, the court entered findings upon every issue, even though a part of them were general. Since we do not believe that it was the mandatory duty of the trial judge to enter special findings, in our opinion, this contention is without merit.

■ The second assignment of error is based upon a contention that the plaintiff's Buick, and not the Ford operated by the defendants, was entitled to the right

of way. Specifically, the plaintiff contends that Grotto road is a private thoroughfare and that, since 1931 Session Laws, chapter 360, § 36a, provides that cars entering a public highway from a private road "shall stop and yield the right of way to all vehicles approaching upon such public highway" the plaintiff's car was entitled to the right of way. The complaint alleges: "At all times herein mentioned Sandy boulevard and N. E. 85th street and Grotto road were public thoroughfares." During the course of the trial the plaintiff moved to amend her complaint by inserting in it a statement that Grotto road was a private roadway. The defendants objected to this motion, and the court deferred a ruling. After all of the testimony had been taken and no admissible evidence had been received showing that Grotto road was otherwise than as described in the complaint, plaintiff's counsel withdrew his motion. Such being the condition of the record, the provision of our laws just mentioned has no application to this action. Nineteen Thirty-one Session Laws, chapter 360, § 35b, provides:

"The driver of any vehicle who has stopped as required by law at the entrance to a through highway shall yield to the other vehicles within the intersection or approaching so closely on the through highway as to constitute an immediate hazard, but said driver having so yielded may proceed, and other vehicles approaching the intersection on the through highway shall yield to the vehicle so proceeding into or across the through highway."

■ The transcript of evidence does not indicate that any issue concerning the right of way was urged during the course of the trial. Apparently it was assumed that, if the statute just mentioned was applicable, the outcome of the trial must be governed by the findings

upon the plaintiff's charge that the Ford did not stop before it entered the highway, as well as by the findings upon the charges which each party made against the other in regard to excessive speed, failure to maintain a lookout, and to have his car under control. We believe that a preponderance of the evidence indicates that the Ford, under the provisions of the statute just quoted, was entitled to the right of way. This assignment of error, in our opinion, is without merit.

The third assignment of error is based upon contentions that the evidence wholly fails to support the following findings: (a) that the presence of four in the driver's seat of the Ford did not contribute to the accident; (b) that the Ford stopped at the stop sign before entering Sandy boulevard; and (c) that the plaintiff failed to maintain a proper lookout. We have read the testimony carefully and are convinced that these findings are supported by substantial testimony. The trial judge had two advantages which are not available to us: one was a visit, accompanied by the attorneys, to the place where the accident occurred; the other was a map of the intersection upon which the witnesses made many initialed marks during the trial indicating the spot or the object to which they were referring. This map was not introduced in evidence and is therefore not before us. In *Kern v. Pullen,* 138 Or. 222 (6 P. (2d) 224, 82 A. L. R. 434), and in *Maneff v. Lamer,* 152 Or. 619 (54 P, (2d) 287), Mr. Justice CAMPBELL commented upon the disadvantages which are ours when the witnesses' indications concerning place, etc., are not preserved in the record. In a memorandum decision which indicates that it was carefully prepared, the trial judge reviewed the evidence, assigning persuasive reasons for his conclusion that the fault lay with the

plaintiff's son and not with the driver of the Ford. We are satisfied that this assignment of error is without merit.

■ The fourth, being the last, assignment of error is based upon the following contention: "The court erred in holding that the rate of speed alone of plaintiff's car violated the basic rule." The plaintiff cites 1931 Session Laws, chapter 360, § 20 and §§ 26 and 49. The basic rule provides that a car shall never be driven at a speed which is not reasonable and prudent, and the above-cited sections of our law mention the various circumstances which should be taken into consideration in determining the reasonableness of the speed. The record does not describe the neighborhood at the intersection with which we are concerned, but an occasional witness referred to a grocery store and a floral shop as being located there. Others testified that large numbers of people resort to the grotto at the end of Grotto road. The number is sufficiently large that Grotto road has been well improved, and, as the plaintiff conceded, is commonly used by the public. Others mentioned cars which were parked near the intersection and stated that a large crowd gathered immediately following the accident. We also note that some of the witnesses lived in the neighborhood and came from their homes or stores nearby at the sound of the crash. These circumstances, together with the fact that the pavement provides for five lanes of traffic, indicate that the collision occurred, not at a forsaken place in a remote part of the state but at a place where people live, make purchases and engage in other activities. The evidence, as already indicated, shows that the driver of the plaintiff's car was proceeding at such a high rate of speed that, although he must have seen

the defendants' car for 100 feet or more, he was unable to bring his car to a stop. He applied his brakes, turned first to the left and then to the right, but nevertheless struck the defendants' car with such force that his own overturned and was hurled against a telephone pole, while that of the defendants, after spinning about upon the pavement, was forced 137 feet into a vacant lot. No analysis of statutes or of the decisions of courts is required to indicate that under these circumstances the plaintiff's car was being operated in an unreasonable and imprudent manner. This contention, in our opinion, is without merit.

■ The defendants contend that it does not appear from the record that the plaintiff possessed any probable cause for taking this appeal and that, therefore, § 7-514, Oregon Code 1930, requires that in affirming the judgment of the circuit court a 10 per cent increase should be imposed. We are convinced that the assignments of error lack merit, but are not satisfied that the awards should be increased. The action was originally instituted by the plaintiff in the district court of Multnomah county by filing a complaint which sought the recovery of $200 damages. Her Buick was worth $240 before the accident and, since it yielded only $40 as junk after the accident, she thought she was entitled to $200 damages. As a witness, she described herself as a seamstress who performed her work in the homes of those who gave her employment, and swore that she needed her car in going about her employment. On the morning of the accident it failed her and later in the day she turned it over to her son for the purpose of having it repaired. He was a bellboy in a hotel, but had studied automobile engines while attending high school. While he was testing the car after he and a friend had made

some repairs, the accident happened. A poor woman, confronted with a judgment of $3,239.80, might believe that she was entitled to a review by a higher court before the judgment could be for all time imposed upon her. We cannot say that the appeal was prompted by bad faith nor that its purpose was to subject the defendants to delay. Developments show that the defendants, in a single action, at a minimum of expense, have won a judgment that otherwise would have required two actions with two appearances of the witnesses, etc. We do not believe that the size of the judgment should be increased.

We have not overlooked the fact that the plaintiff's brief states that she excepts to the award of $739.80 allowed to George Sterling "when the court's findings of fact as to the sum to which Sterling is entitled totals only $635.40". This statement is not correct. We have examined the findings and they award George Sterling $739.80. In this opinion we have not mentioned many authorities cited by the plaintiff. We have, however, examined all of them, but remain satisfied that the record is free from error.

It follows from the above that the judgment of the circuit court must be affirmed.

BEAN, C. J., and BAILEY and CAMPBELL, JJ., concur.