Argued November 19, 1952; affirmed January 7, 1953

## ZICKRICK *v.* COOKE ET AL.

### 252 P. 2d 185

*Gordon A. Ramstead* and *Edward A. Butler,* of Eugene, argued the cause for appellant. With Gordon A. Ramstead on the briefs were Harris, Butler & Husk, of Eugene.

*Windsor Calkins* argued the cause for respondents. On the brief were Calkins & Calkins, of Eugene.

Before BRAND*, Chief Justice, and ROSSMAN, LUSK, LATOURETTE**, WARNER and TOOZE, Justices.

LUSK, J.

Plaintiff has appealed from an order setting aside a verdict in his favor and granting a new trial in an action to recover damages for personal injuries.

The record discloses the following facts: On July 13, 1950, the day of the accident out of which this action arose, plaintiff, C. F. Zickrick, was engaged as an independent contractor in hauling logs by truck from the logging operation of a concern referred to as Rasor Logging Company to the mill. Defendants, Everett Cooke and Oliver Jenkins, doing business as J and C Transportation Co., were similarly engaged. On the day in question one of the defendants' trucks, which was being operated by Cooke, received a load of logs at the loading pole of Rasor Logging Company. There is a dispute in the evidence as to whether the load consisted of six or seven logs, but that matter is of no consequence now. It is conceded that only two binder chains were fastened around the load to keep the logs in place, one at the rear and one, called

*Chief Justice when this case was argued.
**Chief Justice when this opinion was rendered.

a belly wrapper, near the middle. The belly wrapper went around all the logs except the top or peak log; the chain at the rear encircled the entire load. No chain was placed around the forward part of the load. When Cooke had driven his truck thus loaded a distance of about two miles from the loading pole the belly wrapper broke, and as a result a so-called "wing log", on the second tier of logs, was forced "overboard" against the bank at the side of the road, and the trailer or log bunk, which carries the load, was tipped over. As Cooke explained it, "the trailer was on the side, and the load was laying at the left and partly behind the trailer". The rear binder chain, however, remained in place.

Plaintiff, who had started from the Rasor Logging Company operation with a load of logs sometime after Cooke, presently came upon the scene, stopped his truck about 100 feet away, and volunteered aid in the work of clearing the road of the obstruction. Cooke released the cheese blocks on the rear log bunk, thus permitting the trailer to fall back on its wheels to the ground. Plaintiff's truck was then hooked to the trailer with a tow line, and, with plaintiff driving, the trailer was pulled away, leaving the reach attached to defendants' truck. The load of logs thereupon "settled into a somewhat different position", but they were still bound by the rear binder chain, and Cooke decided to cut this chain so as to "get rid of the load". For that purpose he borrowed a chisel from the plaintiff. As there was danger that the wing log, which had swung out to one side, might roll during this operation, plaintiff, at Cooke's request, placed a rock under it to block it. It took about five minutes to cut through the chain. Cooke, anticipating danger that

the log would roll upon him when it was released, ran as soon as the chain was cut, but the log remained temporarily in place, being caught and held by the rock. The binder, which is a device for tightening the chain, fell to the ground. We quote from plaintiff's testimony:

"Q Well, after that chain was cut, then what happened to this load of logs?

"A The logs stayed where they were. The one that swung out to one side, Mr. Cooke asked me to put a rock underneath and chink it up so it would not roll. In other words, block it. I did that just before he started to cut the chain, at his direction.

"Then he cut the chain, and Mr. Buss, who was there at this time, and Mr. Cooke and I stood back a minute to watch the thing, and Mr. Cooke went over to the outfit and grabbed this chain that he had cut in two, what he could get of it.

"Q Where was this chain lying at the time with respect to the load of logs?

"A Part of it was over the load and part of it was laying on the ground.

"Q Then what happened after Mr. Cooke got the chain?

"A He cut the chain—I mean, he picked up the chain and said, 'We should get those tools out of there.' He picked up the chain and started up to the front, and I ducked under there to get my coal chisel, and I think my hammer was underneath there, and the binder.

"And while he was up to the truck, Mr. Buss was still standing back behind it a little distance. While Mr. Cooke was up at the truck, Mr. Buss hollered, 'Look out!' And I flattened as small as I could. And the next thing, the reach hit my leg and my arm and broke them. This log had rolled.

"Q Well, then, the injuries occurred by the reach becoming broken by a log falling on them; is that correct?

"A That is right."

The parties are in agreement that the log which rolled and broke the reach was the one under which the rock had been placed for the purpose of blocking it. Although not material upon the question to be decided, it is only fair to say that Cooke, so far from admitting that he asked plaintiff to retrieve the binder or the tools from their place close to the load, testified that he cautioned him against attempting to do so. He swore, and the event corroborates him, that the log "was in a situation where if it had been jarred either way it would have rolled off".

■ Among other allegations of negligence in the complaint, it was charged that defendants were negligent "In failing to provide plaintiff with a safe place, in which to work, by not placing around the seven log load of logs, the third binder chain." This claim was submitted to the jury by the court in its instructions. The motion to set aside the verdict and for a new trial was allowed upon the ground (among others), as recited in the court's order, that as a matter of law this particular act of negligence was not the proximate cause of plaintiff's injury, and therefore that the court erred in submitting it to the jury. In our opinion, the ruling was correct. The evidence would justify a finding that a failure to use a third binder chain was negligence, which caused the wing log to slip from its place in the load and the trailer to tip over. But in a legal sense this negligence had nothing to do with the injury which plaintiff suffered.

The natural and probable and foreseeable consequences of such negligence were the breaking of the belly wrapper and the dislocation of the load. If a passing motorist had been struck by one of the logs at that time his injury would likewise have been such a foreseeable consequence; but, after the load had

spilled and the trailer had tipped over, this negligence had spent itself. An entirely new situation was created. It became necessary to clear the road of the obstruction caused by the misadventure, and, for the accomplishment of that purpose, to release the logs from the single chain that still bound them so that they could be removed. It was in the course of this operation that the plaintiff was injured, as he says, because of the defendants' negligence. Ordinary care, it could be found, required the use of a third chain properly to hold the load together. The plaintiff was injured, however, after the logs had been freed of any chain, as a necessary step in the work in which the men were engaged, and as the result of forces completely disassociated from the original negligence. It seems to us that the mere statement of these facts demonstrates that the failure to use a third chain on the load in order to make it safe for transportation, was not and could not have been the proximate cause of the injury for which this action was brought.

■ We think it unnecessary to burden this opinion with definitions of proximate cause or discussion of the numerous cases cited by counsel for the plaintiff and which illustrate the application of the doctrine to varying states of fact. The essence of the rule is found in the maxim *"Causa proxima, non remota spectatur."* The proximate, as distinguished from the remote cause, "involves of course the idea of continuity, that the negligent act continuously extends through every event, fact, act and occurrence related to the tortious conduct of the defendant and is itself the logical and natural cause of the injury complained of." 1 Shearman and Redfield on Negligence (rev ed) 92, § 33, quoting *Holler v. Lowery*, 175 Md 149, 200 A 353. The substance of the foregoing has been many

times stated by this court, most recently in *Birks v. East Side Transfer Co.*, 194 Or 7, 19, 20, 29, 241 P2d 120. The "idea of continuity" is wholly absent here.

Counsel for the plaintiff argue in effect that the defendants' failure to use a third chain to bind the logs was necessarily the proximate cause of the injury because the only intervening force was the defendants' own negligence, and such an intervening force does not break the chain of causation. In other words, that it is not a "superseding cause", to use the language of the Restatement, Torts, § 440, where it is said:

"A superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about."

To support this contention plaintiff's brief quotes as follows from 1 Shearman & Redfield on the Law of Negligence (6th ed) §§ 32, 36, (quoted by this court with approval in *Johnson v. Hoffman,* 132 Or 46, 56, 284 P 567):

" * * * Of course, the very definition of a superseding cause implies that the defendant's negligence cannot be the cause of the injury. * * * The chain of responsible connection is not broken so long as the defendant is in any proper sense the cause of the plaintiff's injury, unless the person whose act intervenes is culpable. If such person's act is innocent it is no defence. * * * "

The brief also quotes the following language of the court in *Burger v. Missouri P. R. Co.*, 112 Mo 238, 20 SW 439, 34 Am St Rep 379:

"We do not understand that the maxim, causa proxima, non remota spectatur, applies in case both negligent acts, conducing to produce the injury, were committed by the person from whom redress

is sought. The rule that causal connection between the negligent act and the damage may be broken by the interposition of an independent responsible human agency cannot be applied to relieve one of liability for one negligent act by interposing another, also committed by himself.''

In our opinion, this case does not in any way involve the rule of superseding cause. It is clearly distinguishable from the two cases cited by counsel on this point. The negligence in *Johnson v. Hoffman* consisted in placing a ladder on the sidewalk of a public street against the marquee of a building under construction, and allowing it to remain there. It was a continuing danger to pedestrians, and the question of superseding cause came into the case through evidence that the ladder fell, striking the plaintiff, when a nail protruding from it caught on the coat of a pedestrian who was walking ahead of the plaintiff. This was held to be an ''innocent'' cause and not, therefore, the proximate cause of the injury. In *Burger v. Missouri P. R. Co.* a child was injured under these circumstances: A railroad train was permitted to stand as an obstruction on the crossing of a public street more than ten minutes in violation of a town ordinance. The plaintiff, a school boy, seeing several grownup persons pass between the cars, attempted to do so himself, but, when he had gotten partly through, the train was negligently backed up, without first giving any signal, and the plaintiff's foot was caught between the drawheads of the cars and crushed. It was in connection with such a case that the court used the language above quoted, but it should be observed that the court then proceeded to hold that the two negligent acts charged were not independent acts at all, but that they both united in ''constituting one

act of negligence—the negligent management of the train, and both concur in producing the damage." We are not dealing here with a case of two negligent acts *"conducing* to produce the injury", nor a case of continuing negligence; but, as has been already pointed out, the logical consequence of the failure to use a third chain, namely, the spilling of the load, was already an accomplished fact before the forces were set in motion which resulted in the injury to the plaintiff.

It is, of course, true, as this and other courts have repeatedly said, that the question of proximate cause is generally one for the jury. This is because in the great majority of cases the evidence is such that reasonable minds might differ upon the question. It is just as well established, however, that if there is no evidence connecting the alleged negligence with the injury, or if it is obvious that the act or omission was not the proximate cause thereof, the question is for the court. *Kukacka v. Rock,* 154 Or 542, 544, 61 P2d 297; *Johnson v. Hoffman,* supra, 132 Or 57. This is such a case. It follows that the order granting a new trial must be affirmed.